STATE OF MISSOURI at the relation of HUSSMANN-LIGONIER COMPANY, a Corporation, and LIBERTY MUTUAL INSURANCE COMPANY, a Corporation, Relators, v. WILLIAM C. HUGHES, EDWARD J. McCULLEN and LYON ANDERSON, Judges of and Composing the St. Louis Court of Appeals.—153 S. W. (2d) 40.

Court en Banc, June 30, 1941.

Rehearing Denied, July 25, 1941.

*John F. Evans* for relators.

320

*Hay & Flanagan* and *Robert W. Herr* for respondents.

CLARK, J.—*Certiorari*. Relators, who were defendants in the case of Juhl v. Hussmann-Ligonier Co. et al., 146 S. W. (2d) 106, have filed a petition here claiming that the opinion of the St. Louis Court of Appeals in that case is in conflict with certain controlling opinions of this court.

One Charles Juhl commenced a proceeding before the Workmen's Compensation Commission on June 6, 1938, to recover compensation for an alleged accidental injury sustained by him on December 22, 1937, while in the employ of the Hussmann-Ligonier Company. The Commission denied compensation and its finding was sustained by the circuit court. Plaintiff appealed to the Court of Appeals where, on suggestion of plaintiff's death, the case was revived in the name of his widow. The Court of Appeals, holding that the Commission had proceeded on a wrong theory of law, remanded the case to the circuit

court with directions to reverse the award and remand the cause to the Commission.

The employee had been laid off for some time and returned to work only a day or two before the occurrence of the alleged accident.

In accordance with the company's custom, applicable to all employees who had been laid off, he was given a medical examination before being permitted to return to work and pronounced in good health. On the morning of the alleged accident he walked from his home to his place of work, a distance of about one mile. His first duty was to lift and carry a five gallon bucket of water, weighing about 45 pounds, a distance of about 60 feet. On that particular morning when he lifted this weight he felt a sharp pain in his chest. The pain became more intense and he was taken to his home. From that time until his death many months later he was ill, unable to work or take much exercise and was frequently attended by a physician, either at his home or in a hospital. He was about 67 years old, had done carpenter work involving heavy manual labor during much of his life and had never had any similar attacks prior to the one on December 22, 1937. He had often lifted and carried the same weight without any ill effect.

When Juhl was taken to a hospital in 1937, his trouble was diagnosed as coronary occlusion. The only doctor who testified before the Commission examined Juhl on March 1, 1939. He found a degree of arterio-sclerosis and concluded that Juhl had suffered a previous coronary occlusion, which is a closure of one of the arteries that supplies the heart muscle with blood and is usually in the form of a blood clot. The doctor said: blood does not clot in a normal blood vessel; some injury or disease is necessary to start the clot; in arterial diseases of old age we often have nutritional disturbances in the walls of blood vessels; the clot is not firmly attached when it first starts to form; any sudden exertion may increase the flow of blood, dislodge the clot and block the artery at a smaller point; in his opinion in this case the strain of lifting the bucket of water loosened the blood clot and accounts for the occlusion.

The Commission found and ruled as follows:

"We find from the evidence herein that the condition claimed by employee was neither caused nor aggravated by an accident arising out of and in the course of his employment on December 22, 1937, within the meaning of Section 3305(b), R. S. Missouri, 1929, and of the Missouri Appellate Court decisions; that employee, at the time of said alleged accident, was not subjected to any unusual strain or exertion but was doing the usual and ordinary work incidental to his employment, and that the condition or disability of which he complains was the result of natural causes. Therefore, compensation herein must be and is hereby denied."

The opinion of the Court of Appeals construes portions of our

Compensation law: Section 3691, Revised Statutes Missouri, 1939, Mo. Stat. Ann., p. 8232, which provides that the employer shall be liable irrespective of negligence, to furnish compensation "for personal injury or death of the employee by accident arising out of and in the course of his employment;" and Section 3695, Revised Statutes Missouri, 1939, Mo. Stat. Ann., p. 8238, which provides that the word "accident" shall "be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury," and that the term "injury" and "personal injuries" shall mean "only violence to the physical structure of the body and such disease or infection as naturally results therefrom," and that said terms shall not include occupational disease, nor any contagious or infectious disease, nor "death due to natural causes occurring while the workman is at work."

The Court of Appeals concludes that the "event" is not confined to the cause rather than the result, that the accidental event producing the objective symptoms may be the injury itself rather than the means producing the injury, and that, to warrant an award of compensation, the disability need not result from mere accident, but from accidental means.

Relators say that this holding conflicts with our rulings in DeLille v. Holton-Seelye Co., 334 Mo. 464, 66 S. W. (2d) 834, and Joyce v. Luse-Stevenson Co., 346 Mo. 58, 139 S. W. (2d) 918, both of which the Court of Appeals reviewed and attempted to distinguish from the instant case.

The DeLille case was decided by Division 2 of this court in 1933. There the workman was apparently in good health up to the very moment of his death which came while he was in the act of sawing a piece of lumber. Medical testimony showed that death was due to the rupture of a heart vessel caused by an aneurism, or sac, formed on the wall of a blood vessel by a diseased condition; that when such aneurism has progressed sufficiently even the normal flow of blood may cause a rupture, and that any exertion, even ordinary walking, may hasten such result.

The Compensation Commission made the following finding: "We find from the evidence that employee's death was the result ▇ of disease and was neither caused nor aggravated by an accident arising out of and in the course of his employment on August 28, 1931. At the time employee fell over he was not subjected to any unusual strain, but he was doing the ordinary work incidental to his work as a carpenter. It is also our opinion from the evidence that the deceased's condition had reached such a stage that death was liable to occur at any time. Compensation should not be awarded where employee has a chronic diseased condition which has reached such a stage that death is liable to ensue at any time, and death came while he was

doing the ordinary work of his employment. It is our opinion that that is what occurred in the case at bar, and compensation must be denied.''

The finding of the Commission was sustained by the circuit court. On appeal to this court, the appellant placed much stress on the fact the work deceased was performing caused his pulse rate to increase and thereby hastened death. We said that such was disclosed by the testimony and that it is common knowledge that any physical exertion tends to increase the pulse rate, but that our statute expressly says that ''death due to natural causes occurring while the workman is at work shall not be compensable.'' We also quoted with approval from Gausman v. R. F. Pearson Co., 284 Pa. 348, 131 Atl. 247, as follows:

''Disability, overtaking an employee at his work, is not compensable unless the result of accident. . . . True, Dr. Frederick attributed the exhaustion or stroke to claimant's exertion in the performance of his work, and expressed the opinion that, but for the work, it would not have happened at that time; in other words, that the disability was hastened by the work. Even so, that alone would not constitute an accident; otherwise it would be unsafe to give employment to any one advanced in years. Disability, hastened by such exercise, cannot be treated as accidental; neither can death or disability, overtaking an employee in the course of his employment and resulting from a natural cause; if it could, it would render the employer an insurer of the life and health of the employee.''

We held that the evidence fully supported the finding of the Commission that deceased's death was due to natural causes and that he received no injury due to an accident as contemplated by our statute.

Joyce v. Luse-Stevenson Co., supra, was decided by Division 1 of this court in 1940. The proof showed that a workman, after being employed for several weeks in a damp sub-basement, contracted pneumonia and died. The dependent claimed compensation, not upon the theory of occupational disease, but solely upon the theory that deceased contracted pneumonia as a result of an industrial accident. We held that the proof did not show an accident within the meaning of the Compensation Act. We recognized that disease or injury contracted as a result of some abnormal and unforeseen condition in the employment, arising more or less suddenly, is compensable, but that where disease results from exposure in the ordinary course of the employee's work, the weight of authority is to the effect that the disease is not compensable. In the course of the opinion, we said: ''The event which constitutes an accident is thus clearly a happening or occurrence in part at least external to the body itself. The physiological changes which may result in the workman's own body are *consequences* of the accidental event.''

By these two decisions, we have construed our Compensation Act

to make the employer something less than an unlimited insurer. True, proof of fault or negligence has been dispensed with, but proof of "accident" is necessary. Nor does the injury itself constitute the "event" or "accident" as held by the Court of Appeals. To so hold would make the Act provide for insurance against disease and injury rather than against accident.

The facts in the DeLille case, supra, are very similar to those in the instant case. In both, the injury and death were caused, or hastened, by an increased flow of blood through diseased blood vessels; such increased flow being due to necessary and customary physical exertion incident to the normal duties of the workman. In neither case was there any unusual occurrence, such as a slip, or fall, or abnormal strain. On similar facts, we think the opinion of the Court of Appeals conflicts with the DeLille case. On principles of law decided, we think the opinion conflicts with both the DeLille case and the Joyce case, supra.

In the opinion are cited many cases from other states which seemingly sustain the conclusions reached by the Court of Appeals. We have not examined the statutes which they construe. In this certiorari case we are not concerned with decisions of other courts, but only with the question as to conflict with our own decisions.

For conflict with our decisions, as above specified, the record of the opinion of the Court of Appeals must be quashed. It is so ordered. All concur.