247 S.W.2d 341 (1952)
PALMER
v.
KNAPP-MONARCH CO.
No. 28272.
St. Louis Court of Appeals. Missouri.
March 18, 1952.
*342 George W. Curran, Michael J. Doherty, St. Louis, for appellant.
Renderer, Nolde & Kleinschmidt, Jesse L. Renderer, St. Louis, for respondent.
ANDERSON, Judge.
This is a proceeding under the Workmen's Compensation Law, R.S.Mo. 1949, §§ 287.010-287.800, V.A.M.S., the appeal being by the employee from a judgment of the circuit court affirming an award in favor of the employer.
In her claim for compensation appellant alleged that on February 4, 1948, she suffered an injury in the area of her back and hips and that said accident and injury occurred while "claimant was operating a punch press and in the act of moving boxes of heavy materials away from the press or bench and when lifting said boxes she was caused to sustain the injuries complained of, all arising out of and in the regular course of her employment and while about the business of her employer."
In its answer, the employer denied that said employee suffered an accidental injury which arose out of and in the course of her employment.
At the hearing before the referee, the respondent admitted that Knapp-Monarch Company was a major employer, subject to the Missouri Workmen's Compensation Act; that claimant was an employee of Knapp-Monarch Company on the date of the alleged accident; that the employer had notice of the injury; and that the claim for compensation was filed within the time prescribed by law. Respondent denied, however, that Jean Palmer sustained an accident *343 arising out of and in the course of her employment.
At the hearing, appellant testified that she started to work for Knapp-Monarch Company on February 2, 1948, and received her injury on February 4, 1948. During her employment Mrs. Palmer operated a punch press. She gave the following testimony as to what happened at the time she received her injury:
"* * * that's where I got hurt when I lifted that big box* * * Well, there was a lot of boxes around the machine, the night shift left a lot of boxes and I couldn't get to the machine, I had to move some of them and a fellow just walked off when I asked him to move them, and a fellow was working in back of me, waiting to operate a machine, and he shoved the boxes and I tried to shove it and I couldn't so I tried to lift it and when I did I felt a snap like in my back * * * it was a prettly big box and it had a hub fan.

* * * * * *
"Q. Did you stoop down to lift this box? A. Yes, I did. * * * I lifted it and that's when I heard this snap in my back. * * * I lifted it all the way up and carried it a step or two away from the machine.
"Q. Did you lift the box completely off of the floor? A. Yes, sir. * * * I carried it away from the machine so I would have room to work.
"Q. What happened when you started to lift this box? A. That's when I heard this snap in my back, this pain went through me.
"Q. Did you hear the snap instantaneously and then a pain? A. Yes.
"Q. Was that a sudden pain? A. Right after I heard that snap. * * * I couldn't hardly straighten up."
On cross-examination, appellant testified that she could hardly lift the boxes and heard one of the men working there say that the box weighed over fifty pounds. She further testified:
"Well, I only lifted the big one because I couldn't get to the machine.

* * * * * *
"Q. And the other days you worked, who moved these boxes for you? A. Some colored man.
"Q. Do you know his name? A. No, I don't, he was a colored man.
"Q. And then you moved it away yourself? A. Yes, he walked off, he wouldn't move it for me.
"Q. What did you say, you moved it and somebody moved it back again? A. Yes, I lifted it over and put it on the machine in the back of my, like that (indicating) and I was working in the front and another fellow was going to work on that machine and he put it right close to my machine and that's when I picked it up and put it over on the other side, so I could work. * * * when I lifted this one that was a heavier box on Wednesday, I heard something snap in my back and I couldn't work, I couldn't finish that day; I had to go home. * * * I never had no pain except when I lifted that box, I noticed it snapped in my back and I had pain and couldn't work. * * * I was lifting every day I worked there, but this Wednesday was the heaviest."
After a two day adjournment, and after claimant had rested, she was permitted to re-open her case and gave the following testimony:
"Q. * * * Now, Mrs. Palmer, after you had lifted this box and in the act of sitting this box down as you testified, what, if anything happened? * * * A. The box was so heavy and I set it down on the floor and lost my balance and tried to recall my balance and twisted my back.
"The Referee: After you set it on the floor? A. Yes, sir."
When questioned on cross-examination, claimant gave faulty memory as the reason why she had not given like testimony when she was previously on the stand. She stated she remembered the facts as last narrated after she had talked to her husband. She was then interrogated with respect to a statement she had made in the office of respondent's attorney, which statement was consistent with the testimony given by her two days previously when she was first on the stand, and in which statement she said she did not slip or fall *344 while moving the box. She admitted making said statement. She then testified: "Q. Did you hear the snap in your back when you lifted it? A. Yes."
On re-direct examination she again testified:
"Q. You testified you lost your balance? A. Yes, sir.
"Q. And tried to recover your balance? A. That's right."
There was further evidence in this case from which it could be inferred that claimant suffered serious injury to her back.
The referee found:
"I find the ultimate facts submitted in evidence in this case to be as follows, to-wit:
"I find as a fact that Mrs. Jean Palmer, employee, did not sustain an accident arising out of and in the course of her employment with the Knapp-Monarch Company, employer, to cause her the injuries complained of as set forth in her claim filed herein."
Upon review, the Industrial Commission made a like finding, and by its order affirmed the decision of the Referee. The Circuit Court, on appeal, affirmed.
The sole question on this appeal is whether the finding of the Commission, that appellant did not sustain an accident arising out of and in the course of her employment, is, upon an examination of the whole record, supported by competent and substantial evidence. Const., Art. V, sec. 22, V.A.M.S.
In performing our duty we cannot substitute our own judgment on the evidence for that of the Commission, but must determine whether such tribunal could have reasonably made its finding and reached its decision upon a consideration of all the evidence. We may not set aside the award unless the decision is clearly contrary to the overwhelming weight of the evidence. We are also bound to adhere to the rule of deference to the findings of the Commission where the credibility of the witnesses is involved. Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55.
R.S.Mo. 1949, § 287.020(2), V.A.M.S. defines the word "accident" to mean "an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury."
In construing this statute the courts have held that the injury itself does not constitute the "event" or "accident", but that in cases of this kind where an employee is injured as a result of exertion in lifting or pulling upon some object, there must be some unusual occurrence, such as a slip, or fall, or abnormal strain as a result of an unforeseen event, in order to bring the person injured within the coverage of the Act. State ex rel. Hussman-Ligonier v. Hughes, 348 Mo. 319, 153 S.W.2d 40; Sciortino v. E. Salia & Co., Mo.App., 157 S.W.2d 535; Screeton v. F. W. Woolworth Co., Mo.App., 166 S.W.2d 589; Kendrick v. Sheffield Steel Corporation, Mo.App., 166 S.W.2d 590.
The only evidence touching on the issue was the testimony of claimant and, according to the testimony she gave upon her first appearance on the stand, the facts were as follows: Plaintiff worked on a punch press. On the morning of February 4, 1948, when she arrived at her place of employment she discovered a box near the machine on which she worked. This box weighed over fifty pounds. Claimant lifted the box and put it on a machine in back of the one on which she was working. Thereafter, another employee put the box back, close to the claimant's machine. Plaintiff then picked up the box and, as she lifited it, she felt a "snap" in her back which caused her pain.
It is clear that the foregoing evidence does not make a case of "accident" as that term is defined by Sec. 287.020(2), supra. There is no evidence of an unusual occurrence, such as a slip, fall, or any unexpectedness with reference to the events preceeding the injury. What claimant did was intentionally done, exactly in accord with preconceived design.
Appellant contends that if the "result", that is, the "injury" is unexpected and unforeseen, *345 there is an accident within the meaning of the act.
The appellant relies upon the case of Neidert v. United Transports, Inc., Mo. App., 167 S.W.2d 404. In that case, claimant sustained a rupture while changing a tire, and the question was whether or not the rupture was the result of an accident within the meaning of Section 3695, R.S. 1939, Mo.R.S.A. § 3695 (now R.S.Mo. 1949, § 287.020(2), V.A.M.S.). The evidence in that case showed that claimant therein, at the time he received the injury, was attempting to remove a lug, and for that purpose was using a pipe attached to a wrench. Claimant also had assumed an unusual position in that he placed his foot on the pipe. It further appears that the lug was frozenan unforeseen and unexpected conditionwith the result that in jerking and pulling the pipe claimant strained himself and a rupture resulted. The court held that claimant's injury was an accident within the meaning of the statute. Certiorari to the Supreme Court was applied for on the ground that the opinion was in conflict with DeLille v. Holton-Seelye Co., 334 Mo. 464, 66 S.W.2d 834; Joyce v. Luse-Stevenson Co., 346 Mo. 58, 139 S.W.2d 918; and State ex rel. Hussman-Ligonier Co. v. Hughes, 348 Mo. 319, 153 S.W.2d 40. The Supreme Court granted the writ, which was later quashed after a hearing. State ex rel. United Transports, Inc., v. Blair, 352 Mo. 1091, 180 S.W.2d 737. The Supreme Court, in passing on the case, interpreted the opinion of the Court of Appeals as holding that the unexpected encountering of the frozen lug and the jerking on the pipe was an unexpected and unforeseen event which happened suddenly and violently, and claimant, therefore, suffered an accident within the statute defining that term. The court neither approved nor disapproved the opinion of the Court of Appeals, but merely held that the opinion, as interpreted, did not conflict with the previous decisions to the effect that the injury itself does not constitute the event or accident within the statutory definition. In our judgment, neither opinion in that case is authority for a recovery here.
Appellant also cites and relies on Baird v. Gleaner Harvester Corp., Mo.App., 172 S.W.2d 892. No comfort to appellant can be had from that case. In said case claimant was directed to assist in lifting a truck of steel which had become caught in a hole in the floor, and while he and another were prying upward with a heavy piece of timber the other man let loose and allowed the whole load to fall upon claimant. This was accompanied by immediate pain and injury to claimant's back. The court held that claimant was suddenly subjected to an unexpected and unforeseen event by having a heavy weight thrown upon him and therefore had suffered injury by accident. It is obvious that such ruling can lend no support to the contention of appellant in the case at bar.
After claimant had fully testified to the facts concerning the occurrence in question, and after conferring with her husband, she again took the stand and gave a different account of what transpired at the time she received her injury. She said: "The box was so heavy and I set it down on the floor and lost my balance and tried to recall my balance and twisted my back." This evidence was contrary to her former testimony and to a statement which she gave prior to the trial. In view of their respective decisions, it is obvious that neither the Referee nor the Commission accepted said version of the facts.
We hold that, upon the whole record, the Commission's ruling, denying compensation, is supported by competent evidence and is not contrary to the overwhelming weight of the evidence. Accordingly, the judgment of the Circuit Court sustaining said ruling is affirmed.
BENNICK, P. J., and HOLMAN, J., concur.