James A. ALEXANDER, Onie Alexander and Floyd C. Wilks, Guardian and Curator of Jeanetta Kay Alexander, Dependents of Aaron Alexander (deceased), Appellants,

v.

SAUNDERS MILLS, Inc., and Employers Mutual Liability Insurance Company of Wisconsin, Respondents.

No. 7427.

Springfield Court of Appeals.

Missouri.

Feb. 28, 1956.

Ward & Reeves, Raymond A. Klemp, Caruthersville, for appellants.

John Hall Dalton, Harold B. Treasure, Kennett, for respondents.

McDOWELL, Presiding Judge.

This is a compensation case. The claimants have appealed from a judgment of the

Circuit Court of Pemiscot County, Missouri, reversing final award of the Industrial Commission awarding compensation to claimants-appellants, (dependent parents and minor child) on count of the death of Aaron Alexander, an employee of Saunders Mills, Inc. The total award of the Commission was $7,234 which gives this court jurisdiction. Section 3, art. 5 Constitution of Missouri 1945, V.A.M.S.

The claim was filed by James A. Alexander and Onie Alexander, parents of deceased and Floyd C. Wilks, Guardian and Curator of Jeanetta Kay Alexander, minor child of deceased, against Saunders Mills, Inc., employer, and Employers Mutual Liability Insurance Company of Wisconsin, insurer, before the Industrial Commission of Missouri for compensation on the theory that Aaron Alexander suffered an accident arising out of and in the course of his employment June 3, 1953, by being overcome by carbon monoxide poison which issued from the exhaust of an alfalfa chopper and died as a result thereof.

The referee, and the full Commission on review, awarded compensation on the ground that the death of Aaron Alexander, employee, was the result of an accident arising out of and in the course of his employment, and awarded $3,417 compensation to claimant Jeanetta K. Alexander, minor, and a like amount to claimants, James A. and Onie Alexander, parents, with an additional award of $400 for funeral benefits, making a total award in favor of claimants of $7,234. · From this final award of the Commission the defendants appealed to the Circuit Court where the award was reversed. Claimants appealed to this court.

We shall state the evidence favorable to the award of the Commission awarding compensation. It was stipulated that Saunders Mills, Inc., was an employer operating under the provisions of the Missouri Workmen's Compensation Law, Section 287.010 et seq. RSMo. 1949, V.A.M.S.; that its liability was fully insured by the Employers Mutual Liability Insurance Company; that on or about June 3, 1953, Aaron Lee Alexander was an employee of Saunders Mills, Inc., and was working under the provisions of the Missouri Workmen's Compensation Law; that he was employed by Saunders Mills, Inc., an alfalfa dehydrating mill company of Steele, Missouri, to drive a tractor which pulled a chopper used to harvest alfalfa. He worked on the night shift from 6:30 p. m. until 6:30 a. m. The chopper cuts the hay and loads it on trailers. After the trailer was loaded, the employee had to wait from ten minutes to a half day in the field for other trailers to come from the Mill. During these waiting periods the employees generally sat and laid near the exhaust, under chopper, to keep mosquitos and bugs off of them.

Aaron Alexander was taken to a field about four miles northeast of Bragg City, Missouri, by employer's foreman on the evening of June 2, 1953. When the foreman returned for him at 6:30 a. m., June 3rd, Aaron Alexander was dead. He was found lying underneath the chopper with his face toward the exhaust pipe of the motor. The exhaust was two and one-half to three feet from his head, the exhaust hitting the ground about eighteen inches from deceased's head. The motor was running at the time.

The deputy sheriff of Pemsicot County went to the field to investigate a report of the death. He arrived about 7:45 or 8:00 a. m. and found the body lifeless and also observed the color of the body to be a "bluish-pinkish" color. The coroner, who had not seen the body, testified, from an investigation and from the description of the color of deceased, that he had died of carbon monoxide poisoning and signed an official report to that effect. Alexander's job was cutting alfalfa. The wagon behind the tractor was full when the deceased was found. Attorneys for claimants stipulated that the claimants were dependents of Aaron Lee Alexander. From this set of facts the Referee found that deceased died as a result of an accident arising out of and in the course of his employment. This judgment was appealed to the full Commission and affirmed.

The full Commission made a finding that the employee's death occurred within the period of his employment, while he was resting close to his employer's alfalfa chopper during an enforced lull in his employment, while waiting for employer's truck; that employer had knowledge of such practice and custom; that the employee, at the time, was doing something reasonably necessary to his employment; that while the conduct of the employee may have been reckless, thoughtless or negligent, it did not bar him from the benefits of the workmen's compensation law.

In our opinion we will refer to appellants as claimants and to respondents as defendants.

It is contended by claimants under assignment of error No. II that the trial court erred in finding that the employee did not sustain an accident within the meaning of the Missouri Workmen's Compensation Law, and, under assignment of error No. III, that error was committed in finding that employee did not sustain an accident arising out of and in the course of his employment within the meaning of the Missouri Workmen's Compensation Law.

■ We will discuss these two assignments of error together. In reviewing a compensation case we have the duty to determine whether the Commission's award is supported by competent and substantial evidence upon the whole record. Sec. 22, art. V, Const. of Missouri, 1945, V.A.M.S.

In Francis v. Sam Miller Motors, Inc., Mo.Sup., 282 S.W.2d 5, 11, the Supreme Court stated this law:

" * * * This court has said that 'This does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence. Of course, the reviewing court should adhere to the rule of deference to findings, involving credibility of witnesses, made by those before whom the witnesses gave oral testimony.' Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647, 649; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W. 2d 55, 62." Garner v. Research Clinic, Mo.App., 280 S.W.2d 416; Fuytinck v. Burton W. Duenke Building Co., Mo.App., 280 S.W.2d 449; Crawford v. A. J. Sheahan Granite Co., Mo.App., 211 S.W.2d 52.

In Fuytinck v. Burton W. Duenke Building Co., supra, 280 S.W.2d at page 454, this law is stated:

"We approach the question here presented fully mindful of the statutory rule, well fortified by numerous decisions, that 'all of the provisions of (the Workmen's Compensation Act) shall be liberally construed with a view to the public welfare'. Section 287.800 RSMo 1949, V.A.M.S. While any construction must be fair, it should be liberally construed in favor of the employee where there may be some substantial doubt as to its meaning. Dauster v. Star Mfg. Co., Mo.App., 145 S.W.2d 499, and cases cited."

■ The burden of proof in this case rested upon claimants to prove not only that the death of Aaron Alexander resulted from carbon monoxide poisoning, but that his death arose out of and in the course of his employment. Francis v. Sam Miller Motors, supra; Fowler v. Baalmann, Inc., 361 Mo. 204, 234 S.W.2d 11, 16.

The rule of law was stated in Schmidt v. Rice-O'Neill Shoe Co., Mo.App., 226 S. W.2d 358, 362, as follows:

" 'In determining whether the Commission's award is justified by the evidence, the reviewing court will look only to the evidence most favorable to the award, together with all reasonable inferences that may be drawn therefrom that seem to support the award and must disregard all opposing and unfavorable evidence; * * * and that the weight of the evidence and the

credibility of the witnesses are for the Commission to determine.' "

The Commission, in its additional findings of fact, made this statement: "We find from all the evidence that Aaron Lee Alexander, employee herein, sustained an accident June 3, 1953, arising out of and in the course of his employment with Saunders Mills, Inc., resulting in his death on the same day."

We think the evidence clearly shows that at the time of the death of Aaron Alexander, he was working in the scope of his employment. There is no dispute that deceased was employed to go to the premises where he was found dead to operate an alfalfa cutting machine for his employer; that as a part of his work, after he had cut a load of hay, he was required to wait until his employer had sent another wagon and the evidence shows that during this period of waiting the employees would rest beneath the cutter and leave the engine running so the exhaust would protect them from mosquitos and other insects; that deceased was found dead, lying on his side with his face toward the exhaust and the engine running. He was at the place where he was required to be during his employment so we think the finding of the Commission that deceased died while working in the scope of his employment is sustained by the evidence. Defendants admit that deceased was in its employ at the time of his death but they contend that claimants failed to sustain the burden of proof that the cause of Aaron Lee Alexander's death was accident.

The sole issue involved in this appeal is, was the finding of the Commission that Aaron Lee Alexander sustained an accident on June 3, 1953, arising out of and in the course of his employment with Saunders Mills, Inc., which resulted in his death supported by substantial evidence within the meaning of the Workmen's Compensation Law?

Section 287.020(2) RSMo 1949, V.A.M.S. reads as follows: "The word *accident* as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury."

The Commission, in support of its opinion that deceased died as a result of accident cites Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S.W.2d 601, 604. In this case deceased was employed by the Chevrolet Motor Company in the capacity of traveling sales representative. His method of working was to leave home in a Chevrolet Coach, furnished by employer, to call on dealers in his territory. It was customary for him to come home at night and keep the car in his garage. On the day of death, deceased dressed to make his regular sales trip, went to the garage where he found a flat tire on the rear of his car. His wife later found him lying flat, unconscious on the garage floor alongside the car, where he had been changing the tire, one wheel jacked up, etc. The windows and doors of the garage were closed, probably blown shut by the wind. His wife dragged him from the garage. The doctor testified that the body was in a flushed cherry-red condition and pronounced it one of carbon monoxide poisoning. The Commission's finding was that there was an accident; that deceased was in the employ of his employer at the time of death and that the accident arose out of the course of employment. This finding was affirmed by the Circuit Court. It was contended in this case that there was no sufficient evidence to warrant the finding that there was an accident and that the accident arose out of and in the course of his employment. The Supreme Court stated that the findings of the Commission reduced to narrative form would be as follows:

"* * * On January 16, 1928, Charles L. Leilich was in the employ of the Chevrolet Motor Company; he was employed as salesman; on said date the death of said employee was caused by an accident ('an unexpected or unforeseen event happening suddenly and violently * * * and producing at the time objective symptoms of

an injury'); the accident happened while the employee was engaged in the work of salesman for his employer, and in this manner: He was overcome from carbon monoxide gas poisoning caused by an automobile running in a closed garage; the accident arose out of and in the course of the employment; before and at the time of the accident both employer and employee had elected to accept the Act."

Then the court stated this law:

"That there was an accident, as defined by the act, and that it arose out of and in the course of the employment, were findings of fact, and not conclusions of law; they were ultimate facts, and, with the other constitutive facts found or admitted, afforded a sufficient basis under section 3 of the act * * * for an award of compensation."

On page 605 of 40 S.W.2d of the opinion (7-9) (b) the court said:

"It is said that 'out of' and 'in the course of', as used in the act, are not synonymous; that an accident may arise in the course of an employment and yet not arise out of it. This may be true, but it is difficult to conceive of an accident arising out of an employment and not in the course of it. But be that as it may, the only question with which we are confronted is whether the evidence was sufficient to warrant the finding that the accident 'arose out of the employment.'"

It was held in this case that it did not matter if death was caused by the negligence of the employee in running the motor or failing to keep the doors of the garage open, the only matter is whether or not the accident resulting in his death arose out of and in the course of his employment within the meaning of the Compensation Act. The court said it was not necessary that the accident should have been one reasonably to be anticipated. The only question is whether it did in fact arise. The court made this statement: "If death ensues, it is immaterial whether that was the reasonable and likely consequence or not; * * *."

Moyer v. Orek Coal Co., 229 Mo.App. 811, 82 S.W.2d 924, was a case where a coal miner was employed in firing shots and was unable to fire one of four shots in the room because of damp fuse; that when deceased went back into the room he was overcome by fumes and died as a result thereof. The court held it was accident arising out of the course of his employment. It supports the holdings of the Supreme Court that the consensus of authority is to the effect that an injury to an employee arises in the course of his employment when it occurs within the period of his employment, at a place where he might reasonably be while he is reasonably fulfilling the duties of his employment, or in the performance of some task incident thereto.

In our opinion there can be no doubt, under the evidence in the instant case, that this alleged injury arose in the course of employment. It occurred within the period of the employment and at the place where the employee might reasonably be while fulfilling the duties of his employment.

Defendants contend that there is no evidence of an accident within the meaning of the Missouri Workmen's Compensation Act. They cite cases which we have already commented upon in the opinion. They say there is no evidence of an unseen or sudden event which caused the death of Aaron Lee Alexander.

Defendants cite McDaniel v. Kerr, Mo.Sup., 258 S.W.2d 629. This case is so removed under the facts as to be no authority for defendant's contention. It must be remembered that each case is determined upon the particular facts involved in the suit and the facts in the case cited by defendants justify the holding of the court under such facts but, in no way, is controlling in this case.

Palmer v. Knapp Monarch Co., Mo.App., 247 S.W.2d 341, is cited by defendants. In this case the Industrial Commission denied

compensation on the ground that claimant did not sustain an accident arising out of and in the course of his employment. The law is stated that a reviewing court cannot substitute its judgment on the evidence for that of the Industrial Commission but must determine whether the Commission could have reasonably made its findings and reached its decision from consideration of all of the evidence. The court said that the injury itself does not constitute the event or accident as defined in the Workmen's Compensation Act. It held that where claimant injured himself by lifting or pushing up some object there must be some unusual occurrence such as a slip, or fall or abnormal strain as a result of an unforeseen event in order to constitute an accident. There was substantial evidence in the case tried to justify the findings of fact but such facts are different from those in the instant case.

■ Considering the evidence in the light most favorable to the findings of the Commission, and favorable inferences which the Commission had a right to draw from the evidence before it in the instant case, we think there was substantial evidence to support the findings of the Commission that Aaron Lee Alexander sustained an accident June 3, 1953, arising out of and in the course of his employment with Saunders Mills, Inc., resulting in his death on the same day.

We have examined the authorities cited by both claimants and defendants and find there is no authority cited upon similar facts as in the instant case. We, however, believe that there were sufficient facts in the instant case from which the Commission could have reasonably inferred that the cause of death was unforeseen and unexpected, happening suddenly or violently producing objective symptoms of the injury which caused the death. There was more testimony than the mere finding of deceased's body at the place of employment. The tractor was running, deceased's face was near the exhaust which was striking the ground close to his face and head; the color of the body was a bluish-pinkish which indicated that death had been caused by carbon monoxide poisoning, and the report of the coroner, who investigated the matter, was that death had been caused by such poisoning.. This, coupled with the fact that there was no proof of any other cause of death, pointed convincingly to the fact that the manner of death was carbon monoxide poisoning. We think it could be reasonably inferred that the condition of the air or possibly the deceased having fallen asleep and suddenly moving too close to the force of the exhaust, even though it might have been carelessness or negligence on his part, was the unexpected and unforeseen event or happening which suddenly and violently produced the objective symptom found on the body which caused the death.

Judgment of the trial court is reversed and remanded with directions to enter the judgment of the Commission.

STONE, J., concurs in separate opinion.

RUARK, J., concurs in result.

STONE, Judge (concurring in result).

Although not at a place where he was required to be, the employee was found at a place where he reasonably might have been during an enforced lull in his employment; and, if he died as the result of an "accident" within the meaning of the Missouri Workmen's Compensation Law [Section 287.020(2)], the recent opinion of our Supreme Court in Culberson v. Daniel Hamm Drayage Co., Mo., 286 S.W.2d 813, would seem to leave no room for doubt but that such accident arose out of and in the course of employment. Section 287.120 (1). (All statutory references herein are to RSMo 1949, V.A.M.S.) See also Jackson v. Euclid-Pine Inv. Co., 223 Mo.App. 805, 22 S.W.2d 849. And, as I read their brief, defendants do *not* assert that the accident (*if, in fact, there was one*) did not arise out of and in the course of employment;

but, their *sole* contention is that claimants failed to carry the burden of proof cast upon them [Francis v. Sam Miller Motors, Mo., 282 S.W.2d 5, 12(2)] to show that the employee died by "accident" within the statutory definition of that term, i. e., by *"an unexpected or unforeseen event"* happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury." Section 287.020(2).

Much has been written (not all of which is wholly consistent or readily reconcilable) by our appellate courts concerning the term "unexpected or unforeseen event." In Guillod v. Kansas City Power & Light Co., 224 Mo.App. 382, 18 S.W.2d 97, 100(1), it was "clear" to the Kansas City Court of Appeals "that an event need not necessarily be a cause but may be and generally is a result." In Carr v. Murch Bros. Const. Co., 223 Mo.App. 788, 21 S.W.2d 897, 899, the St. Louis Court of Appeals thought that the " 'unexpected or unforeseen event,' as used in the statute, includes an unexpected or unforeseen event (result)." In Brewer v. Ash Grove Lime & Portland Cement Co., 223 Mo.App. 983, 25 S.W.2d 1086, 1088(1), where claimant recovered benefits on account of the electrocution of her husband, this court said bluntly that "the 'event' was the 'death.'" And, in Moyer v. Orek Coal & Mining Co., 229 Mo. App. 811, 82 S.W.2d 924, 930, Presiding Judge Shain of the Kansas City Court of Appeals approvingly cited the Guillod and Brewer cases, supra, carelessly attributing the holding in the latter case to the

St. Louis Court of Appeals. Citing only the Guillod case, supra, as authority, the Kansas City Court of Appeals held in Rinehart v. F. M. Stamper Co., 227 Mo. App. 653, 55 S.W.2d 729, 732(7, 8), that "event is more comprehensive in meaning [than accident], and in this connection is synonymous with the word occurrence", that "(i)t [event] includes all of the steps or connected incidents from the first cause to the final result", and that "(i)t is not limited in meaning to the initial cause, but may include both cause and effect." And, in Downey v. Kansas City Gas Co., 338 Mo. 803, 92 S.W.2d 580, 585–586, the above excerpts from the Guillod and Rinehart cases, supra, were quoted with approbation and the Brewer case, supra, was cited with apparent approval.

Without pausing to discuss, undertaking to differentiate, or bothering to overrule expressly any of the foregoing holdings, our courts have, in more recent decisions, stated in plain and unambiguous terms that the injury or death does not constitute the "accident" or the "event" contemplated by the Compensation Law,[1] and that the "event" is not the result but that which produces the result.[2] After quoting (as this court had done in Brewer v. Ash Grove Lime & Portland Cement Co., supra, 25 S.W.2d loc. cit. 1088)[3] definitions of "event,"[4] our Supreme Court said in Schulz v. Great Atlantic & Pacific Tea Co., 331 Mo. 616, 56 S.W.2d 126, 127(1), a case not subsequently questioned or overruled, in which a widow sought benefits on account of the death of her husband, a

1. State ex rel. Hussmann-Ligonier Co. v. Hughes, 348 Mo. 319, 153 S.W.2d 40, 42; Finerson v. Century Electric Co., Mo., 227 S.W.2d 740, 745(5); Baird v. Gleaner Harvester Corporation, Mo.App., 172 S.W.2d 892, 897(4); Palmer v. Knapp-Monarch Co., Mo.App., 247 S.W.2d 341, 344(5).

2. Johnson v. Westinghouse Electric & Mfg. Co., Mo.App., 192 S.W.2d 588, 594–595 (2); Kerby v. Missouri State Highway Commission, Mo.App., 238 S.W.2d 464, 469(4).

3. "In Webster's Revised Unabridged Dictionary we find 'event' defined: 'The consequence of anything; the issue; conclusion; that in which an action, operation, or series of operations, terminates.' "

4. "An event is that which flows from the cause, and is called an event because it eventuates from causes." 21 C.J. 1260, note 50; 31 C.J.S., p. 474, note 37.
   "That which comes, arrives, or happens; that which falls out; any incident good or bad, esp. one that is important or remarkable; as, the events of the past year." Webster's International Dictionary.

baker, from heat prostration, that *"(t)he event in this case * * * was the overexhaustion, by heat, of respondent [decedent], resulting in his death."* Although the quoted definitions tended to support the earlier view that an "event" may be or include the result (which, of course, is the injury or death), the holding in the Schulz case, supra, inherently recognized a distinction between cause (i. e., overexhaustion by heat) and result (i. e., death) and was not out of harmony with the cases [5] which subsequently announced the now-settled principle that "(t)he event which constitutes an accident is * * * clearly a happening or occurrence in part at least external to the body itself."

That the employee in the instant case died by reason of carbon monoxide inhaled during the night of June 2–3, 1953, is not questioned by defendants on this appeal, so we are not here concerned with a condition reflecting the cumulative effect of months or years of exposure [6] and we do not have sharply-conflicting or contradictory evidence as to the cause of death.[7] There is nothing in the record to dissipate or dispel the strong presumption against suicide,[8] which "arises from the facts that love of life is the strongest instinct of human beings, that there is a natural desire for self-preservation, that there is in the human breast a fear of death and the religious sanctions imposed upon one who commits suicide, and that of the pain one might suffer in the act of self-extermination." Perringer v. Metropolitan Life Ins. Co., Mo.App., 244 S.W.2d 607, 614(2).

On a record utterly devoid of any evidence bearing upon those subjects, I am unwilling to encourage or engage in unbridled conjecture and sheer speculation (as claimants would have us do) concerning atmospheric conditions or the whimsical possibility that the employee might have fallen asleep in a place of safety and thereafter moved closer to the exhaust. But, firmly convinced, as I am, that this court has no right to sustain the award on any such guesswork and surmise, I nevertheless am persuaded that there is no reason to seek a tenuous theory in flights of fancy. For, if the employee died of carbon monoxide poisoning (as appears to be conceded), there must have been a lethal accumulation of carbon monoxide gas (whatever may have caused such accumulation) and the employee must have inhaled it (wherever he may have lain down). Following the quoted holding in the Schulz case, supra, I am of the opinion that the *sudden and unforeseen event* in the instant case was such lethal accumulation of carbon monoxide gas and the inhalation thereof by the employee, which was "clearly a happening or occurrence in part at least external to the body itself" [see cases cited in footnote 5], and that the ensuing *result,* for which benefits were sought and awarded, was the employee's death.[9]

5. Joyce v. Luse-Stevenson Co., 346 Mo. 58, 139 S.W.2d 918, 920(3); State ex rel. Hussmann-Ligonier Co. v. Hughes, supra, 153 S.W.2d loc. cit. 42(4); McDaniel v. Kerr, 364 Mo. 1, 258 S.W.2d 629, 634; Killian v. Sterling Aluminum Products Co., Mo.App., 227 S.W.2d 526, 531.

6. Contrast McDaniel v. Kerr, supra; Rush v. Swift & Co., Mo.App., 268 S.W.2d 589; Gillett v. Prairie Brass & Metal Co., Mo. App., 179 S.W.2d 494.

7. Contrast Francis v. Sam Miller Motors, Mo., 282 S.W.2d 5; Wright v. Penrod, Jurden & Clark Co., 229 Mo.App. 1147, 88 S.W.2d 411.

8. Hendrix v. Metropolitan Life Ins. Co., Mo., 250 S.W.2d 518, 520(1); Bragg v. Ohio Chemical & Mfg. Co., 349 Mo. 577, 162 S.W.2d 832, 836(1); Darby v. Henwood, 346 Mo. 1204, 145 S.W.2d 376, 379–380(2).

9. No case has been cited or found in which (absent, as here, any statutory provision on the subject) any importance has been attached to the fact that death by carbon monoxide poisoning has occurred out-of-doors rather than in a building or enclosure. See the numerous cases digested in the comprehensive 90-page annotation on "Compensability of injury, disease or death from inhaling poisonous fumes or gas in course of employment" in 19 N.C. C.A.(N.S.) 598.

Believing that the Industrial Commission reasonably could have made its findings and award of benefits, I agree that the judgment of the circuit court should be reversed and the cause remanded with directions to enter judgment affirming the award of the Commission.

RUARK, J., concurs in opinion of STONE, J.