**Reta Mae HALL, Claimant-Appellant,**

v.

**MID–CONTINENT MANUFACTURING COMPANY, Employer-Respondent,**
and
**Western Casualty and Surety Company, Insurer-Respondent.**

No. 23652.

Kansas City Court of Appeals.

Missouri.

Feb. 4, 1963.

W. Don Kennedy, Nevada, Mo., for appellant.

H. H. McNabb, Jr., Belisle & McNabb, Butler, for respondent.

MAUGHMER, Commissioner.

This is a workmen's compensation case. Appellant claims she sustained a hernia caused by an accident which occurred on July 7, 1959, and which she asserts arose out of and in the course of her employment. It is admitted that on July 7, 1959, defendant Mid-Continent Manufacturing Company was an employer, operating under the Missouri Workmen's Compensation Law, that its liability was fully insured by the Western Casualty and Surety Company, that claimant was an employee and filed a timely claim for benefits.

The Referee and the Industrial Commission found that claimant "did not sustain an injury by accident arising out of and in the course of her employment" and denied the claim. On review the circuit court affirmed. On appeal to this court claimant asserts (1) that the trial court erred in affirming the award of the Commission because her injury was the result of an "unusual strain" or "abnormal strain", and therefore an accident within the meaning of the Act, and, (2) the cause should be remanded with directions that the Commission determine if claimant sustained any injury and if so, the extent of her disability. Since the Commission found "no accident" and hence no liability, it was unnecessary to determine the extent of injury or disability. Should this court determine on appeal that claimant suffered a compensable accidental injury, the cause will be remanded to determine the extent of disability, but if the Commission should be affirmed, such a remand would be unnecessary. We are, therefore, concerned primarily with claimant's first point, namely, "Did she sustain an injury caused by accident arising out of and in the course of her employment"? The courts have many times declared and it is generally understood that we cannot substitute our judgment on a disputed question of fact for that of the Commission. What we must de-

cide is whether or not that body could reasonably have made the finding it did. The burden is on claimant to prove a compensable injury.

On July 7, 1959, the employer Mid-Continent Manufacturing Company was engaged in building aluminum storm windows and doors at Rich Hill, Missouri. It employed about 75 persons of whom claimant was one. She worked in the factory—part of the time she would "lay up" material and part of the time she did "notching". It was while "notching" that the injury occurred. In her description of this process, claimant said: "We would take the extrusion off the little cart, they were brought over to us by the saw men, inserted it in the notching machine, we tripped the machine, and it cut this notch". The extrusions referred to were long pieces of aluminum. Two notches were cut by the notching machine in each screen to provide a space for the locks in each window. This machine was made of metal, was about five feet in height, heavy and was not anchored to the floor. It stood on four legs. The aluminum extrusions were inserted into the machine die at about waist level and then a "foot trip" was tripped by the employee's foot to release the cutting die.

Claimant said the notching machine was "not in good working condition" at the time she got hurt, that "when we tripped the machine it bent this AE material to such an extent that it was hard to pull out" and that when the aluminum strips were put into the machine and notched "it would stick". She said this difficulty with the machine started during the summer of 1958, that the trouble continued during the winter and got worse —"stuck worse as time went on". Some of the employees "tinkered" with it and they were told to "squirt oil on it".

Mrs. Hall stated the machine "was always rather hard to pull through,—it would always stick a little". Sometimes it took two of the women to pull it loose and sometimes they called the foreman. Claimant testified that there were days when no help was need-

ed and on some days they had to have help three or four times to loosen it. They built about 200 windows per day, which required 400 notches. Mrs. Hall would break the material loose sometimes by getting "a foot up on the machine and get hold with both hands and pull this way and wiggle it that way". At other times a big rubber mallet was procured and "pounded on it to get it loose". Her written statement (Exhibit L) also recited that the extrusions frequently stuck, and pulling and straining were necessary to remove them.

It was claimant's testimony that on the occasions prior to July 7, when she pulled, she could feel pain momentarily, but "it didn't stay with me". On the day of the injury a piece of aluminum got stuck. The employee said: "I pulled and strained with it as hard as I could. * * * While I was pulling it felt like I tore everything loose, is the way it felt. There was an intense pain there in the lower part of my abdomen". The foreman came by, loosened the material and Mrs. Hall worked the rest of the day on another type of work.

A few days later she visited Dr. Boyd, an osteopath. The next week she stopped working. On July 25, she commenced taking treatments from Dr. Post, a chiropractor. In May, 1960, she consulted a Dr. Allen, M. D., at the suggestion of her attorney. Dr. Allen diagnosed her condition as "extensive abdominal adhesions and a hiatus hernia." He thought it would take some unusual strain to cause her complaints and condition. Mrs. Hall was 47 years of age and claimed her health had been good prior to July 7, 1959.

On cross-examination Mrs. Hall admitted that several times prior to July 7, the machine had become stuck and she had "pulled as hard as she could", the same as on July 7. She said that Dr. Post had treated her for a back injury, which she thought was "connected with her injury" although she had previously suffered with back trouble.

The Industrial Commission affirmed the award of the referee and adopted his find-

ings of fact. Therefore, we set out such findings of fact and conclusions of law in toto:

"I find from the evidence that the employee did not sustain an injury by accident arising out of and in the course of her employment.

"The employee's testimony and her statement (Claimant's Exhibit L) indicate that 'AE' aluminum extrusions frequently stuck in the 'notching' machine operated by the claimant, and pulling and struggling would be necessary to remove the extrusion from the machine after the notches had been cut. This was a normal routine incident of the employment, and when sticking occurred it was routine for the employee on occasion to place her foot on the machine for additional pulling power as she struggled to remove the extrusion. Although 'AE' extrusions did not invariably stick it was not unexpected or unusual when they did. While attempting to remove a stuck extrusion in the usual manner employed in attempting to remove a stuck extrusion, the employee felt an intense pain in her stomach and allegedly sustained the injury complained of. She testified she was pulling as 'hard as she could' but on cross examination admitted that in the past she pulled as 'hard as she could' with her foot braced against the machine, and it does not appear that she was exerting any more force in any different manner on the occasion in question than she had in the past when removing a stuck extrusion. I find no 'abnormal strain' within the meaning of Crow v. Missouri Implement Tractor Co. [Mo], 307 S W2d 401; State ex rel United Transports, Inc. v. Blair [352 Mo. 1091], 180 SW2d 737, of Williams v. Anderson Air Activities, [Mo.App.], 319 SW2d 61.

"I do not believe that the strain can be said to have been abnormal or unexpected in the sense that it was more strain than the claimant had anticipated. Only the result, to wit; the injury, can be said to have been unexpected."

Claimant is here attempting to recover workmen's compensation benefits by reason of an accident which she allegedly sustained. Section 287.020(2) gives this definition of "accident" as meant by the Act:

"The word 'accident' as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury".

The question as to just what facts and circumstances constitute an accident so as to be compensable under Missouri Workmen's Compensation Law has been disputed for many years. In determining the law and applying it to various facts and situations the Missouri courts have not been completely consistent.

In Howard v. St. Louis Independent Packing Co. et al., Mo.App., 260 S.W.2d 844, claimant's duties required him to carry quarters of beef from one point to another. The employee was carrying an unusually heavy quarter, felt a sudden pain in his back and sustained an injury. The Commission found there had been an accident and then found specifically that the "Employee suffered unusual strain when a forequarter of beef struck his left shoulder with unusual force as he swung said beef on his shoulder". The St. Louis Court of Appeals ruled that "where the injury results from the intentional act of the employee in exerting muscular force", it cannot be classified as an accident under the Act unless there is "some unusual occurrence, such as a slip, or a fall or an abnormal strain" and reversed a finding for claimant. This Howard case was specifically overruled by the Supreme Court en Banc, in Crow v. Missouri Implement Tractor Company and Hardware Mutual Casualty Company, Mo., 307 S.W.2d

401, 405. In the Crow case the Supreme Court held that a slip or fall was not necessary but that a recovery could be founded upon an unusual strain or exertion without a slip or fall. Particularly in the Crow case claimant sustained an injury while he was holding up the elevator to a corn picker. The Commission found factually that he suffered an "abnormal strain" which was not preceded by any "unusual or unexpected occurrence", and denied compensation. This elevator and corn picker were not being handled in the usual normal way. On this feature we quote from the facts résumé on page 402 of the opinion: *"The machine was new and due to paint on the equipment, the turnbuckle could not be turned and the elevator adjusted in the usual way"*. (Italics added). The Supreme Court ruled that such an "abnormal strain" sustained under these circumstances could become the basis of an affirmative award. Examples were cited, namely:

"In Baird v. Gleaner Harvester Corporation, Mo.App., 172 S.W.2d 892, the employee was injured because some extra weight was suddenly shifted to him and he sustained an injury to his back. In State ex rel. United Transports, Inc. v. Blair, 352 Mo. 1091, 180 S.W.2d 737, the employee was injured while attempting to loosen a lug which held a tire on an automobile".

It will be noted that in these two examples the strain was not only "abnormal" but occurred when the employee's working procedure had deviated from the normal routine. On page 405, the opinion made reference to and quoted approvingly the rule announced by the Supreme Court of Maryland as follows:

"The court stated the general rule to be as follows [Kelly-Springfield Tire Co. v. Daniels, 199 Md. 156], 85 A.2d [795] loc. cit. 797(1): 'This broad rule, which has been adopted quite generally in the United States following the decisions in England, has not been fully accepted in Maryland. In this State the

sudden and unexpected rupture of some portion of the internal structure of the body, or the failure of some essential function of the body, is held to be an accidental injury only when it results from some unusual strain or exertion of the employee or some unusual condition in the employment' ".

The Springfield Court of Appeals (Brotherton v. International Shoe Company, Mo. App., 360 S.W.2d 108) has recently reviewed and discussed this whole matter. Brotherton, while unloading a perforator, was using a long wrench with pipe over the handle of the wrench. He moved out on the end of the pipe and bounced up and down to pry the perforator loose. His foot slipped and he hurt his back. In part, the Commission found "while employee's exertions in pulling on said pipe, may have been unusual, abnormal and outside of the scope of his normal activities, the evidence does not so indicate" and denied compensation. We shall by-pass the slipping feature of the Brotherton case as not pertinent to our case where no slipping is alleged. The appellate court held that Brotherton's abnormal and unusual strain was sufficient to constitute a compensable accident and reversed the Commission. The court referred to and again approved its statement of the rule as declared in Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61, as follows:

"[W]here an employee suffers an *unexpected and abnormal strain* (at least while he is engaged in doing something beyond and different from his normal routine) and, as a result thereof, sustains an injury which is not the result of orderly natural causes, the injury is an accident within the meaning of sec. 287.020(2)".

From a study of the above authorities we can arrive at two rather definite conclusions: (1) It is not necessary that claimant slip or fall. (2) If claimant suffers an injury resultant from an "abnormal strain" and while he is engaged in doing something different from his normal work-

ing procedure, it is an accident under the Act and compensable. Where such a situation exists our courts have ruled accidents and approved recoveries, especially where the Commission has made an affirmative award and findings. However, if, for example, an employee's customary duties require him to regularly lift 150 pound sacks of feed or swing a pick mining coal and on one of these occasions while lifting or swinging, he injures his back, we doubt if he has suffered an accident within the meaning of the Act or under the Missouri decisions herein cited.

■ We shall discuss five of the cases to which appellant has specifically invited our attention:

In Keller v. Bechtel, McCone, Parsons Corp. et al., Mo.App., 174 S.W.2d 925–927, claimant was a laborer engaged in digging a ditch. His duties were to shovel mud and dirt over the side of the ditch a distance of five or six feet. He had been doing this work all day and did it the day after the injury. At quitting time he felt a pain on his right side which was diagnosed as a hernia. The court held there was no accident and approved the action of the Commission denying compensation. The court also made this comment:

"If the evidence is such as to authorize a finding either that there was an accident or that there was not an accident, and the commission, who are the triers of the facts, find against the employee's claim, that finding is necessarily conclusive on appeal. Doughton v. Marland Refining Co., 331 Mo. 280, 53 S.W.2d 236, 241".

In Higbee v. A. P. Green Fire Brick Co., Mo.App., 191 S.W.2d 257, 258, claimant suffered a hernia while lifting a barrel of oil. Lifting oil barrels was a part of his regular work. The court said:

"In this case it was a part of the duties of this employee to lift the barrels of oil, which happened to be laying sideways, to an upright position. He

had done this in the regular course of his employment many times on prior occasions. On this occasion he used no more strain or exertion than was ordinarily incident to such work. There was no unexpected or unforeseen event in the act of lifting the barrel. What he did was intentionally done and was done exactly in accordance with preconceived design. There was no mishap, either in the act of lifting or in the environment. He did not slip or fall or use any more exertion or greater strain than the regular exertion and strain that was usual and ordinary in lifting a barrel of oil to an upright position".

Compensation was denied in this case.

In Sciortino v. E. Salia & Co., Inc., et al., Mo.App., 157 S.W.2d 535, compensation was denied where the employee was injured while lifting crates of oranges, this being his regular work.

Back in 1929, (Carr v. Murch Bros. Const. Co. et al., 223 Mo.App. 788, 21 S.W. 2d 897), the court approved a Commission award allowing compensation for aggravation of an existing hernia sustained when a locomotive engineer reached up over his head to turn off a steam valve. Apparently this case is some authority for the theory that the result (injury) is the accident or unusual event, regardless of the fact that only regular and usual duties were being performed.

This court (Guillod v. Kansas City Power & Light Co., 224 Mo.App. 382, 18 S.W.2d 97), approved a Commission award of compensation where the employee, after running an electric service line to a house, lifted a coil of wire into a truck and sustained an injury.

Judge Stone in his concurring opinion (Alexander v. Saunders Mills, Inc. and Employers Mutual Liability Ins. Co. of Wisconsin, Mo.App., 289 S.W.2d 483, 489), noting the variance in some of our Missouri court decisions in this field, said: "Much has been written (not all of which is wholly con-

sistent or readily reconcilable) by our appellate courts concerning the term 'unexpected or unforeseen event.'" Then after reference to the cases to which we have referred and some others, Judge Stone continued:

"Without pausing to discuss, undertaking to differentiate, or bothering to overrule expressly any of the foregoing holdings, our courts have, in more recent decisions, stated in plain and unambiguous terms that the injury or death does not constitute the 'accident' or the 'event' contemplated by the Compensation Law, and that the 'event' is not the result but that which produces the result".

In our case Mrs. Hall does not claim that she slipped or fell. She was doing the same work that she had done for months and doing it in the same way. Her method in attempting to loosen the machine was identical with the method used by her on various other occasions and over a period of many months. The Commission found "it was routine for the employee on occasion to place her foot on the machine for additional pulling power as she struggled to remove the extrusion". There is substantial evidence to support this conclusion. The Commission found that on this occasion she was not exerting any more force or pulling in any different manner than on other occasions. And further, the strain cannot be said to have been abnormal or unexpected— "Only the result, to-wit; the injury, can be said to have been unexpected". We believe that all of these conclusions are supported by the evidence. It must be remembered that this court, as to factual findings, cannot substitute its judgment for the finding of the Commission, but rather must affirm that body unless the findings are unsupported by substantial evidence.

It is our ultimate conclusion that under the law and the facts the Commission was correct in holding that "employee did not sustain an injury by accident arising out of and in the course of her employment".

The judgment of the circuit court approving the finding of the Commission denying compensation is affirmed.

SPERRY, C., concurs

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.